Bruce GODSCHALK

v.

**MONTGOMERY COUNTY DISTRICT ATTORNEY'S OFFICE and Bruce L. Castor, Jr., District Attorney, Montgomery County, in his official capacity**

No. C.A. 00–5925.

United States District Court, E.D. Pennsylvania.

Aug. 27, 2001.

Daivd Rudovsky, Kairys & Rudovsky, Philadelphia, PA, Seth Kreimer, Philadelphia, PA, Barry C. Scheck, New York, NY, for plaintiff.

Walter S. Jenkins, Sweeney, Sheehan & Spencer, Philadelphia, PA, for defendants.

*MEMORANDUM OPINION AND ORDER*

WEINER, District Judge.

The plaintiff brought this action under 42 U.S.C. § 1983 for access to biological evidence for DNA testing that is currently in the possession of the Office of the District Attorney of Montgomery County and which plaintiff contends can conclusively

determine whether he is guilty of two rapes for which he was convicted in state court in May, 1987. Plaintiff requests that this court issue an injunction requiring the defendants to release the biological evidence for DNA testing. Presently before the court is the motion of the plaintiff for summary judgment. For the reasons which follow, the motion is granted.

Summary judgment is appropriate when there are no genuine issues as to any material facts. See Fed.R.Civ.P. 56(c). In such a case, a trial is unnecessary because a reasonable fact finder could not enter a judgment for the nonmoving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We must construe all evidence and resolve all doubts raised by affidavits, depositions, answers to interrogatories, and admissions on file in favor of the nonmoving party.

The material facts necessary for disposition of the plaintiff's motion are mainly taken from the state court record and are undisputed.

Plaintiff was charged with two rapes that occurred in 1986. A rape test kit examination of both victims, Elizabeth Bednar and Patricia Morrissey, proved positive for seminal residua. At trial, the Commonwealth relied on the identification testimony of one of the victims (the other victim could not make an identification) and a confession made by the plaintiff.

Following his conviction by a jury on both counts of rape as well as two counts of burglary, plaintiff was sentenced to a total term of imprisonment of 10 to 20 years. Plaintiff filed a post-trial motion, claiming, *inter alia*, that the trial court erred in not suppressing his confession. The motion was denied. Plaintiff appealed to the Superior Court of Pennsylvania again contending, *inter alia*, that the trial court had erred in not suppressing his confession. The Superior Court ruled that plaintiff's confession was voluntary and that the trial court properly refused to suppress his inculpatory statements. *Commonwealth v. Godschalk*, 389 Pa.Super. 648, 560 A.2d 826 (1989). Plaintiff's petition for allocatur was denied by the Pennsylvania Supreme Court on August 15, 1989. See *Commonwealth v. Godschalk*, 522 Pa. 623, 564 A.2d 915 (1989).

Almost six years later, plaintiff filed in the Court of Common Pleas of Montgomery County a Petition to Inspect and Test Evidence, seeking to have the Montgomery District Attorney's Office turn over seminal residue samples obtained from the two rape victims in order to conduct DNA tests. The petition was denied by the Montgomery Court of Common Pleas and by the Superior Court. *Commonwealth v. Godschalk*, 451 Pa.Super. 425, 679 A.2d 1295 (1996).

In denying the Petition, the Montgomery Court of Common Pleas found that plaintiff's confession, which was deemed valid and admissible by the Superior Court, represented "overwhelming evidence of the appellant's guilt, completely separate from any identification testimony." The Superior Court also found that plaintiff's conviction "rests largely on his own confession which contains details of the rapes which were not available to the public." 679 A.2d at 1297.

Plaintiff's claims for relief in this action are that by refusing to release the biological evidence for DNA testing, defendants have: (1) deprived plaintiff of Due Process of Law; (2) deprived plaintiff of the opportunity to make a conclusive showing that he is innocent of the crime for which he is incarcerated, in violation of the Due Process Clause of the Fourteenth Amendment; (3) deprived plaintiff of the opportunity to make a conclusive showing of actual

innocence, in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment; (4) deprived plaintiff of his right to present evidence of innocence in State Court, Federal Court, or before the Pennsylvania State Board of Pardons, in violation of the Confrontation and Compulsory Process Clauses of the Sixth Amendment; (5) deprived plaintiff of the opportunity to effectively litigate his claim that he is innocent of the crime for which he is currently incarcerated, thereby preventing plaintiff from access to the state and federal court to obtain legal relief, in violation of the Due Process and Equal Protection guarantees of the Fourteenth Amendment and (6) deprived plaintiff of his right to avail himself of the opportunity to apply for executive clemency and the function that executive clemency serves in preventing the violation of his constitutional rights that would arise from continued incarceration of an inmate who can make an actual showing of innocence. See Complaint at 5–7.

■ In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. 1194. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

Plaintiff contends that DNA testing on the genetic material would exonerate him because only the assailant could have left this DNA material and if the DNA does not match, he could not be the assailant. Defendants respond that there is no need to do DNA testing on the genetic material since plaintiff's confession was not coerced and contained details of the rapes which were not known to the public and would only be known by the perpetrator.

Plaintiff made a confession which was taped and transcribed. Plaintiff acknowledged at trial that it was his voice on the tape. In that confession, plaintiff confessed to details of both rapes which were not available to the public. In the case of Bednar, plaintiff stated the following:

1. He watched the victim while she was in the recreation room reading a book. (pg. 7, lines 16 thru 22).

2. He said the victim was wearing a robe. (pg. 7, lines 23 thru 26)

3. He said he entered through a rec-room window. (pg. 6, lines 24 thru 28).

4. He waited until the victim went upstairs before entering the townhouse. (pg. 7, lines 27 thru 32)

5. He went up two sets of stairs before finding the victim's bedroom. (pg. 7, line 12).

6. He took a pillow from another room before entering her room. The room that the pillow was removed from was on the same level as the victim's bedroom. (pg. 8, lines 13 thru 20)

7. He said the victim told him other people lived in the home and that someone could come home. (pg. 9, lines 5 thru 7 and line 19)

8. He said she was nude. (pg. 9, lines 10 thru 15).

9. He said he had been drinking prior to the incident and that he normally drank beer. (pg. 7, line 14 and pg. 18, lines 16 thru 19).

10. He said he had sex with the victim while she was on her back on the floor. (pg. 9, lines 17 thru 23).

These details, which were not released to the press, matched those in the statement given to the police by Bednar.

In the case of Morrissey, plaintiff stated the following:

1. He was outside of the bedroom window watching the victim. (pg. 2 lines 10 thru 17)

2. He said the victim was reading a magazine while she was lying in bed. (pg. 2 lines 15 thru 22).

3. He said there was a light next to her bed, which was on, allowing him to see the victim. (pg. 2, line 23 and pg. 3 lines 2 and 3)

4. He had sex with the victim on her bed. (pg. 4, line 6).

5. He said the victim was wearing underpants. (pg. 6 lines 11 thru 14).

6. The victim was on her stomach during the intercourse. (pg. 4, lines 11 thru 14).

7. Prior to having sex, plaintiff removed the victim's tampon and tossed it to the side. (pg. 4, line 8 and lines 19 thru 24).

8. He described the victim as a brunette with a medium build. (pg. 5, line 6)

9. He said he was gentle with the victim. (pg. 5, line 18).

10. He said he left the apartment by going out the door. (Pg. 5, line 4).

11. He remembered being chased off the patio by a man prior to the assault. (pg. 5, lines 25 thru 28 and pg. 6, lines 1 thru 8).

Again, these details matched those contained in the statement given by Morrissey to the police. Before making these statements, plaintiff was read his Miranda rights. (pg. 1, lines 1 thru 9). Plaintiff stated that he was willing to make a statement, that he was there on his own free will and that he had been treated "very well". (pg. 1, lines 11 thru 20, pg. 2, line 1). There is absolutely no evidence in the transcript that plaintiff's confession was obtained through coercion, undue pressure or other improper police interrogation techniques. There is no evidence that the interrogating detective put words in plaintiff's mouth.

In denying defendant's Petition to Inspect and Test Evidence, the Court of Common Pleas of Montgomery County found plaintiff's confession to be valid and admissible and that it presented "overwhelming evidence of the appellant's guilt" completely separate from any identification testimony. The Superior Court of Pennsylvania also found plaintiff's conviction rested largely on his own confession which contained details of the rapes which were not available to the public.

However, in considering whether plaintiff is entitled to the biological evidence under the Due Process Clause of the Fourteenth Amendment, we must employ the standard set by the Supreme Court in *Brady* and *Bagley, supra*. The one district court decision which applied this standard to a request for genetic material for DNA testing in a § 1983 action, *Harvey v. Horan*, 119 F.Supp.2d 581 (E.D.Va.2000)(decision on motion to dismiss); 2001 WL 419142 (E.D.Va. April 16, 2001)(decision on motion for summary judgment), ordered disclosure of the evidence. The district court based its decision on the lack of positive identification of the plaintiff as one of the culprits and doubts as to the credibility of the state's witnesses.

In the case *sub judice*, however, we also have the uncoerced, detailed confession of the plaintiff. In addition, the defendants

point out that the DNA taken from Bednar is incapable of being tested because of an insufficient amount of product, except to reach the conclusion that the DNA comes from a male. See affidavit of Charlotte J. Word, Ph.D. In addition, defendants argue that even if DNA testing of genetic material in the Morrissey case took place, the results could not be completely exculpatory since Morrissey stated that she had sexual relations with her fiancé the night before the assault and therefore the genetic material might be that of the fiance.

Nevertheless, if by some chance no matter how remote, DNA testing on the biological evidence excludes plaintiff as the source of the genetic material from the victims, a jury would have to weigh this result against plaintiff's uncoerced detailed confessions to the rapes. While plaintiff's detailed confessions to the rapes are powerful inculpatory evidence, so to any DNA testing that would exclude plaintiff as the source of the genetic material taken from the victims would be powerful exculpatory evidence.[1] Such contradictive results could well raise reasonable doubts in the minds of jurors as to plaintiff's guilt. Given the well-known powerful exculpatory effect of DNA testing, confidence in the jury's finding of plaintiff's guilt at his past trial, where such evidence was not considered, would be undermined. Even though Dr. Word has averred that the Bednar material is incapable of being tested, the parties have nevertheless agreed to have the material tested by plaintiff's expert in California. With respect to the Morrissey material, since the genetic material was obtained shortly after the rape, DNA results which excluded the plaintiff would still be evidence of his innocence for the jury to consider. The fiancé could also be tested to see if he was the source of the genetic material. Thus, we find that there is indeed a reasonable probability that had DNA evidence which showed plaintiff was not the source of the genetic material found on the victims been disclosed to the defense, the result of the proceeding would have been different. Of course, the ultimate decision as to whether the results of the DNA testing would warrant an acquittal or a retrial is for the state trial court to make.

Since DNA testing of the genetic material could indeed provide material exculpatory evidence for a jury to consider along with the inculpatory evidence of plaintiff's detailed confession, we find that plaintiff has a due process right of access to the genetic material for the limited purpose of DNA testing.

## ORDER

The motion of the plaintiff for summary judgment is GRANTED.

The parties shall follow the testing protocol to which they agreed and which was approved by the court.

Judgment is ENTERED in favor of the plaintiff and against the defendants.

IT IS SO ORDERED.

---

1. Of course, DNA testing might also reveal that plaintiff was indeed the source of the genetic material, thereby providing further inculpatory evidence to bolster the jury's verdict.