**Jorge Ortiz JIMENEZ, Plaintiff,**

v.

**State of NEW JERSEY, New Jersey State Police Lab, Thomas Bretell, Lynne A. McBride, Evelyn F. Moses, ALan Lane, Edward LaRue, Defendants.**

**Civil Action No. 02–245.**

United States District Court,
D. New Jersey.

Feb. 20, 2003.

J. David Alcantara, Atlantic City, NJ, for Plaintiff.

Robert P. Shane, Deputy Attorney General, Trenton, NJ, for Defendants.

### *OPINION*

RODRIGUEZ, District Judge.

This matter comes before the Court on Defendants' Motion to Dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has filed a cross-motion to remand the matter to state court and to recover attorneys' fees and costs. For the reasons stated below, Defendants' motion will be granted and Plaintiff's motion will be denied.

### BACKGROUND

When considering a motion to dismiss a complaint, the district court is required to accept as true all well-pleaded allegations in the complaint and view all reasonable inferences in the light most favorable to the non-movant. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). Plaintiff has alleged in his Amended Complaint the following facts, which will be accepted as true for the purpose of deciding this motion.

On July 26, 1999, at approximately 1:00 a.m., Plaintiff was arrested by Atlantic City police officers. (Amended Complaint, First Count, ¶ 6.) Plaintiff remained in jail

for a period of nearly twenty two months, at which point all charges were dismissed. (Amended Complaint, First Count, ¶ 7.) Plaintiff alleges that, during his incarceration, he requested a DNA test that he contended would prove his innocence. (Amended Complaint, First Count, ¶ 10.) On April 26, 2001, Plaintiff was informed of the test results, which he alleges were "inconclusive." (Amended Complaint, First Count, ¶ 11.) Thereafter, on May 9, 2001, Plaintiff was released from prison. (Amended Complaint, First Count, ¶ 7.)

 Plaintiff filed the original complaint on November 15, 2001 in the New Jersey Superior Court, Law Division, Atlantic County, Docket No. ATL–L–3716–01, captioned, *Jorge Ortiz Jimenez v. State of New Jersey, et al.* Plaintiff's complaint alleged violations of his constitutional rights in contravention of 42 U.S.C. § 1983 and various state torts claims. The summons was served upon Defendants on December 18, 2001. Defendants filed a Notice of Removal, pursuant to 28 U.S.C. § 1441, with this Court on January 17, 2002.[1]

## PLAINTIFF'S § 1983 CLAIMS

 Plaintiff asserts claims against all Defendants[2] for violations of his constitutional rights under the Fourth, Fifth, Eighth and Fourteenth Amendments. The only alleged constitutional violation raised by Plaintiff is that, while incarcerated, he requested a DNA test and one was not administered as expeditiously as he expected, thereby leading to his continuous incarceration for approximately twenty two months. Plaintiff does not specifically allege the reason for the delay or the personal involvement of any of the Defendants.[3] In addition, he was released when the results of the tests were reported as inconclusive.

 Defendants argue that they are entitled to qualified immunity on the § 1983 claims because Plaintiff does not have a constitutional right to a DNA test; alternatively, Defendants argue that their con-

---

1. Plaintiff argues that removal was inappropriate and therefore moves for remand to state court. This argument fails on two grounds. First, a federal district court has removal jurisdiction over claims that arise from a federal statute. 28 U.S.C. § 1441(b) (1994). Since Plaintiff's claim involves an action founded on 42 U.S.C. § 1983, the Court's removal jurisdiction is invoked. Further, the Court has jurisdiction over Plaintiff's state law claims because the entire case may be removed when a separate or independent claim is removable based on the Court's federal question jurisdiction. 28 U.S.C. § 1441(c) (1994). Therefore, the § 1983 claim confers the Court jurisdiction over the state law claims as well as the federal claims.

Second, a motion to remand for any reason other than subject matter jurisdiction must be made within 30 days of the filing of the notice of removal. 28 U.S.C. § 1447(c) (Supp.2002). Here, the notice of removal was filed on January 17, 2002. Having found that the Court does have subject matter jurisdiction over the entire controversy, additional arguments regarding removal would be untimely.

2. Plaintiff's claims against the State of New Jersey and the New Jersey Division of State Police fail under § 1983. The Supreme Court expressly held that the term "person" in the statute does not include the state or state officials acting in their official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, only the claims against the individual defendants remain.

3. It is unclear from the Amended Complaint whether the claims are based on individual liability or upon a theory of respondeat superior. The Supreme Court has held that "[S]ection 1983 will not support a claim based on a respondeat superior theory of liability." *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). Thus, to the extent that any of Plaintiff's claims are based on the theory of respondeat superior, these claims will be dismissed.

duct was reasonable in that any such right was not clearly established. This Court agrees and therefore dismisses Plaintiff's complaint.

■ Government officials are generally granted qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When conducting a qualified immunity analysis, the court first considers "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If a constitutional right is found, however, then the court's next inquiry is to determine whether that right was clearly established based on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151 (citing *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

Therefore, the Court's first inquiry is whether there is a constitutional right to DNA testing. The only published opinions to address this issue under § 1983 involved incarcerated plaintiffs who were seeking injunctions to obtain access to genetic evidence for the purpose of conducting DNA testing. *Harvey v. Horan,* 278 F.3d 370 (4th Cir.2002) (deferring to legislature the issue of the potential constitutional right to post-conviction DNA testing for persons convicted of federal crimes and declining "to fashion a broad constitutional due pro-

cess right of access to DNA testing"); *Godschalk v. Montgomery County District Attorney's Office,* 177 F.Supp.2d 366 (E.D.Pa.2001) (finding that the plaintiff had a "due process right of access to the genetic material for the limited purpose of DNA testing"). Although the two cases came to opposite results, both courts relied on *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the Supreme Court stated that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Therefore, the alleged constitutional right to DNA testing in those matters was analyzed as a right to access potentially exculpatory information.

This case presents a different situation. Here, the Court is being asked to consider whether a defendant in a criminal case has a constitutional right to DNA testing prior to trial. Essentially, Plaintiff's claim is that his constitutional right was violated because the state did not perform a DNA test in making its case against him in a more timely manner and before being ordered to do so by a court. Accordingly, this Court concludes that the Plaintiff's claim is more appropriately analyzed under *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). There, the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not require the "State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 57, 109 S.Ct. 333. The Court further stated, "If the [state supreme] court meant ... that the Due Process Clause is violated when the police fail to use a particular investigatory tool, we

strongly disagree.... [T]he police do not have a constitutional duty to perform any particular tests." *Id.* at 58–59, 109 S.Ct. 333.

Applying the analysis presented in *Youngblood*, it is clear that, as the law stands, Plaintiff did not have a constitutional right to DNA testing in the pretrial stages of his criminal case. Had the matter gone to trial and Plaintiff was currently seeking post-conviction relief or access to the physical evidence itself, a different case would have been presented and a different result may have been appropriate. *See Godschalk*, 177 F.Supp.2d at 370 (granting access to DNA evidence); *State v. Thomas*, 245 N.J.Super. 428, 586 A.2d 250 (1991) (ordering post-conviction DNA testing where state's evidence against defendant was "not strong"). Here, Plaintiff had not yet been tried and the matter was still in the pretrial stages. Therefore, despite the passage of nearly twenty two months, Plaintiff has not specifically alleged the reason for this delay or the personal involvement of any of the defendants. As a result, Plaintiff's Amended Complaint, alleging a constitutional violation because DNA testing was not performed earlier in the investigation of his case, will be dismissed for failure to state a claim upon which relief may be granted.[4] Further inquiries concerning qualified immunity are not necessary. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

## PLAINTIFF'S STATE LAW CLAIMS

Defendants also move to dismiss Plaintiff's state law claims, arguing that the claims are barred by the New Jersey Tort Claims Act ("Act"), N.J. Stat. Ann. §§ 59:1–1 to 12–3 (West 1992 & Supp. 2002). The Act provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J. Stat. Ann. § 59:3–3 (West 1992). The New Jersey Supreme Court established that "[t]he same standard of objective reasonableness that applies in § 1983 actions also governs questions of good faith arising under the Tort Claims Act." *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 744 A.2d 1146, 1153 (2000). Thus, having found that the defendant's conduct was reasonable in that no constitutional rights were violated, the Court further concludes that Plaintiff's state law claims against the individual defendants fail.

The Act further provides that "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable." N.J. Stat. Ann. § 59:2–2(b) (West 1992). Thus, the State of New Jersey and the Division of State Police are also shielded from liability.

Accordingly,

IT IS HEREBY ORDERED this ___ day of February, 2003 that Defendants' Motion to Dismiss Plaintiff's Amended Complaint [18] is *GRANTED*; and

---

4. The Court's conclusion is consistent with an unpublished decision from the Eastern District of Pennsylvania. *Harrison v. Abraham*, 1996 WL 752285 (E.D.Pa. December 19, 1996). There, the plaintiff alleged that he repeatedly requested a DNA test and continually pleaded his innocence. The plaintiff remained in prison for ten months, at which point the DNA test proved that he had not had sexual relations with the victim and all charges were dropped. The Court relied on *Youngblood* and dismissed the plaintiff's claims that were based on the failure to perform DNA testing before being ordered to do so. The plaintiff's claims of violations of his other constitutional rights, including arrest without probable cause and failure to provide for a speedy trial, survived the defendant's motion to dismiss.

IT IS FURTHER ORDERED that Plaintiff's Motion to Remand and for Attorney's Fees and Costs [17] is *DENIED*; and

IT IS FURTHER ORDERED that Plaintiff's Amended Complaint is *DISMISSED WITH PREJUDICE.*