IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,              )
                                  )
                    Respondent,    )        2 CA-CR 2012-0207-PR
                                  )        DEPARTMENT B
            v.                     )
                                  )        O P I N I O N
JAMES LEE HESS,                    )
                                  )
                    Petitioner.    )
                                  )

PETITION FOR REVIEW FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR26023

Honorable Howard Hantman, Judge

REVIEW GRANTED; RELIEF DENIED

Barbara LaWall, Pima County Attorney
  By Jacob R. Lines                                          Tucson
                                              Attorneys for Respondent

Law Offices of Thomas Jacobs
  By Thomas Jacobs                                          Tucson
                                               Attorney for Petitioner

V Á S Q U E Z, Presiding Judge.

¶1 Petitioner James Hess seeks review of the trial court's order denying his successive petition for post-conviction relief filed pursuant to Rule 32, Ariz. R. Crim. P. In this opinion, we address Hess's argument that the court erred in rejecting his claim of newly discovered evidence. Hess has raised other issues that do not meet the criteria for publication, *see* Ariz. R. Sup. Ct. 111(b); Ariz. R. Crim. P. 31.26, which we address in a separate, contemporaneously filed memorandum decision. *See* Ariz. R. Sup. Ct. 111(h); Ariz. R. Crim. P. 31.26. We will not disturb the court's ruling unless it clearly has abused its discretion. *See State v. Swoopes*, 216 Ariz. 390, ¶ 4, 166 P.3d 945, 948 (App. 2007). Hess has not met his burden of establishing such abuse here.

¶2 After a jury trial, Hess was convicted of four counts each of first-degree burglary, kidnapping, and armed robbery, two counts of sexual assault, and one count each of attempted sexual assault and public sexual indecency. He was sentenced to presumptive, consecutive prison terms, the longest of which is life imprisonment. He sought post-conviction relief, which the trial court granted in part, ordering that several of his consecutive sentences be served concurrently and determining Hess was entitled to 2,237 days of "time credit." We affirmed his convictions and sentences on appeal and denied relief on his petition for review of the trial court's denial of his first petition for post-conviction relief. *State v. Hess*, Nos. 2 CA-CR 1996-0168, 2 CA-CR 2000-0402-PR (consolidated) (memorandum decision filed Jan. 30, 2003).

¶3 In September 2003, Hess filed a pro se notice of and petition for post-conviction relief. During the course of his post-conviction relief proceeding, Hess, through counsel, filed a claim requesting that certain evidence regarding one of the sexual

2

assault victims be tested using "now available" techniques for DNA[1] analysis. *See* A.R.S. § 13-4240. The trial court initially denied Hess's request, but pursuant to his motion for rehearing, ordered that DNA testing proceed.

¶4 After DNA testing was completed, the trial court permitted Hess to file a supplement to his pending petition for post-conviction relief. In that supplement, Hess claimed DNA testing had excluded him as a contributor to sperm obtained from a sample taken from the vagina of one of the victims and a sample taken from the toilet in the restroom in which Hess had assaulted her. He argued the test results were newly discovered evidence entitling him to a new trial not only on the charges related to that victim, but on all charges "because the State's theory at trial was firmly based upon the alleged modus oper[a]ndi."

¶5 After an evidentiary hearing, the trial court rejected Hess's claim, finding the DNA test results were not likely to have changed the jury's verdict. It concluded the sample taken from the toilet was not material because there was no evidence Hess had any contact with the toilet. It also determined that, because the victim had stated to police that her assailant had not ejaculated and because the other evidence of Hess's guilt was strong, the evidence that he was not a contributor to DNA found in the sample taken from the victim's vagina was not likely to have changed the verdict. The court further observed that, were it permitted to consider additional rebuttal evidence presented by the

---

[1]Deoxyribonucleic acid.

3

state,[2] it had "no doubt . . . [the] newly discovered evidence would not have changed the verdict." After the court denied Hess's other claims and his motion for rehearing, this petition for review followed.

¶6 A defendant is entitled to relief on a claim of newly discovered evidence if he or she "establish[es] that the evidence was discovered after trial although it existed before trial; that it could not have been discovered and produced at trial through reasonable diligence; that it is neither cumulative nor impeaching; that it is material; and that it probably would have changed the verdict." *State v. Saenz*, 197 Ariz. 487, ¶ 7, 4 P.3d 1030, 1032 (App. 2000); *see also* Ariz. R. Crim. P. 32.1(e).

¶7 Under Rule 32.1(e), a defendant also must demonstrate that he or she "exercised due diligence in securing the newly discovered material facts." That is, the defendant must show he or she "was diligent in pursuing" a remedy under Rule 32. *State v. Bilke*, 162 Ariz. 51, 53, 781 P.2d 28, 30 (1989). The trial court did not squarely address this requirement, instead discussing only the requirement that Hess demonstrate the newly discovered facts "could not have been discovered and produced at trial through reasonable diligence." *Saenz*, 197 Ariz. 487, ¶ 7, 4 P.3d at 1032.

¶8 The trial court found, however, that the method of testing used had been available since 1998 and noted "it took ten more years for the testing that led to the claims in this Rule 32 petition." Nothing in Hess's petition below or his petition for

---

[2]The trial court had concluded it could not consider rebuttal evidence presented by the state, including that the DNA in the sample from the victim's vagina matched the DNA of her husband-to-be and that the two had intercourse before the assault.

4

review explains why Hess could not have sought DNA testing and brought his claims based on the test results previously. This defect alone would justify our decision to deny relief. *Cf. State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984) (appellate court will affirm trial court's ruling if result legally correct for any reason).

¶9 Even assuming, however, that Hess had been diligent in requesting DNA testing based on a method unavailable at the time of his trial, he has not demonstrated the trial court abused its discretion in rejecting his claim. First, Hess complains the court erred by considering evidence not presented at trial and evidence presented by the state during the Rule 32 proceeding, including the evidentiary hearing.[3] But he does not develop this argument in any meaningful way and cites no authority suggesting a trial court may not consider such evidence in determining, as required by Rule 32.1(e), whether the newly discovered material facts "probably would have changed the verdict." *See Bolton*, 182 Ariz. at 298, 896 P.2d at 838.

¶10 Below, Hess relied on *Commonwealth v. Reese*, 663 A.2d 206 (Pa. Super. Ct. 1995), to argue the trial court could not consider the state's evidence. In *Reese*, the Pennsylvania Superior Court determined the lower court properly "refused to allow [the Commonwealth] to present evidence," at a post-conviction relief hearing, that suggested recently obtained DNA test results were not exculpatory. 663 A.2d at 209-10. The court determined that, in considering whether the exculpatory evidence "would likely have

---

[3]Although the trial court stated in its ruling that it was not considering the state's evidence, we agree with Hess that it appeared to consider evidence not presented to the jury.

5

resulted in a different verdict if admitted at trial," "rebuttal testimony" not previously presented to the jury was "irrelevant" to that determination. *Id.* at 210.

¶11　　　We disagree. Rule 32.1(e) requires a trial court to determine whether the newly discovered evidence probably would result in a different verdict. Other evidence that significantly reduces the exculpatory value of the new evidence presented by a defendant is clearly relevant to resolving that question. Nothing in Rule 32.1(e) requires the court to artificially narrow the scope of its inquiry by ignoring evidence the state undoubtedly would offer at a new trial in response to the defendant's new evidence. Nor do we find any sound policy reason to adopt such a rule. As our supreme court noted in *State v. Fisher*, motions for a new trial based on newly discovered evidence are "disfavored" and "should be granted with great caution." 141 Ariz. 227, 251, 686 P.2d 750, 774 (1984). The court further observed that a trial court, in evaluating the effect of new witness testimony, properly may consider the credibility of that witness without "usurp[ing] the function of the jury." *Id.* And, the court in *Fisher* considered evidence not presented to the jury, including a letter the witness had written to the defendant after he had been found guilty. *Id.* We see no analytical difference pertinent here between a trial court evaluating witness credibility and a trial court evaluating the weight that could be given other types of new evidence—both are a necessary component of determining whether that evidence would probably result in a different verdict.

¶12　　　Nor does Hess address the trial court's conclusion, in its order denying relief, that, if permitted to consider the state's evidence, it had "no doubt" the DNA test results would not have changed the verdict. The state's evidence, in sum, was that Hess

6

did not ejaculate during his sexual assault of the victim, that neither he nor the victim touched the toilet during the kidnapping and assault, and that the sperm found in the victim's vagina was that of her husband-to-be resulting from their recent sexual intercourse. In light of those facts, we agree with the trial court that the DNA test results were unlikely to affect the verdict.

¶13 The trial court's determination was based, in part, on its finding that the evidence of Hess's guilt was strong. Although Hess complains that finding "ignore[d] the complete lack of physical evidence, including 133 latent fingerprints from the four crime scenes, none of which linked [him] to the crimes," he provides no citations to the record supporting his claim that there was no physical evidence. And he does not meaningfully address the court's discussion of various witnesses' identification of him as the assailant, instead appearing to incorporate by reference arguments he made below. But that procedure is not permitted by our rules. Ariz. R. Crim. P. 32.9(c)(1)(iv). Finally, he does not explain on review how or to what extent the state relied at trial on the presence of semen in the victim's vagina. Indeed, he acknowledged below that "[n]either the State nor the Defendant based any argument upon the inconclusive serology test results."

¶14 Although Hess cites numerous cases in which he claims similar newly discovered evidence warranted a new trial despite strong circumstantial evidence of guilt, we find these cases distinguishable—particularly in light of Hess's failure to explain or support his argument that the state's case was otherwise deficient. For example, in *State v. Pope*, 80 P.3d 1232, ¶ 61 (Mont. 2003), relief was warranted when the defendant

7

convicted of "sexual intercourse without consent" was excluded by DNA testing, in part because the victim could not remember whether she had intercourse with the defendant and also because "there was little evidence presented at trial from which a reasonable juror could find that [the defendant] had intercourse with [the victim], consensual or non-consensual." Hess has not identified any similar gap in the state's evidence against him. In *People v. Starks*, 850 N.E.2d 206, 213 (Ill. App. Ct. 2006), new DNA evidence warranted relief in part because "the State relied heavily upon the semen evidence" at trial—a situation Hess acknowledged is not present here.

¶15        Hess next argues the trial court did not rule upon his separate constitutional claims that, in light of the newly discovered evidence, his convictions violate the Fifth, Sixth, and Eighth Amendments to the United States Constitution. Thus, he reasons, he is entitled to "rehearing with respect to [those claims]." But Hess offers no explanation how these claims would afford him relief when his Rule 32.1(e) claim does not. And, in any event, the authority he cites does not support a conclusion he is entitled to relief. He cites a case addressing a defendant's right to DNA testing—a right clearly not at issue here. *See Godschalk v. Montgomery Dist. Atty's Office*, 177 F. Supp. 2d 366 (E.D. Pa. 2001). And he cites two United States Supreme Court cases discussing claims of actual innocence. *See McDaniel v. Brown*, 558 U.S. 120 (2010); *House v. Bell*, 547 U.S. 518 (2006). Plainly, if Hess has not successfully demonstrated the DNA test results probably would have changed the verdict, he cannot hope to support a claim "that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 538.

8

¶16     Finally, we do not address Hess's claim that he is entitled to resentencing because "the newly discovered DNA evidence casts doubt upon his guilt." Even if we agreed the evidence did so, Hess did not request this relief below. *See* Ariz. R. Crim. P. 32.9(c)(1)(ii).

¶17     For the reasons stated herein and in our contemporaneously filed memorandum decision, although review is granted, relief is denied.

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

CONCURRING:

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

9