NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DAULFUS BARNES, *Appellant.*

No. 1 CA-CR 13-0346

FILED 10-28-2014

Appeal from the Superior Court in Maricopa County
No. CR 2010-008051-001
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

COUNSEL

Office of the Attorney General, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kathryn L. Petroff
*Counsel for Appellant*

Daulfus Barnes, Florence
*Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jon W. Thompson joined.

---

**H O W E**, Judge:

¶1        This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for Daulfus Barnes asks this Court to search the record for fundamental error. Barnes has filed a supplemental brief in propria persona, which the court has considered. After reviewing the record, we affirm Barnes's convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**

¶2        We view the facts in the light most favorable to sustaining the trial court's judgment and resolve all reasonable inferences against Barnes. *State v. Fontes*, 195 Ariz. 229, 230 ¶ 2, 986 P.2d 897, 898 (App. 1998).

¶3        When victim was 12 years old, she lived with Barnes and her mother ("Mother"), younger sister, and younger brother at an apartment in Tempe, Arizona. Barnes lived with them intermittently; sometimes he was gone for months. Victim shared a room with her sister, but they had their own beds, while her brother had his own room.

¶4        One night, Victim was awoken by her "pants being pulled down." Barnes was standing over her and left when he noticed that she was awake. Barnes later made a second attempt. Victim and her sister were sleeping when Barnes came late one night into their bedroom. He told Victim's sister to go sleep with Mother. After Victim's sister left, Barnes pulled down Victim's pants and caressed her vagina.

¶5        The family subsequently moved to a house, and the children had the same sleeping arrangement as before. Barnes continued to come into Victim's room at night and force her to do "sexual acts on him." If Victim refused, then he would threaten either to "whoop" her, put the family hermit crabs on her, or remove her from the cheerleading team.

¶6        The first incident of oral sex occurred at the house. Barnes took Victim to the laundry room, which was detached from the house, and

made her "perform oral sex" on him. She threw up and cried as a result. Seeing the vomit and Victim crying, Mother asked Barnes what happened. He told her that he was "chastising" Victim and that he had thrown up after exercising.

¶7        Barnes continued demanding oral sex from Victim. One evening, he took her into the living room and turned on a porn movie when everyone else was asleep. He then made Victim "ejaculate him with lotion, as well as give him oral sex while watching the movie." On another evening, Barnes brought Victim into his bedroom—where Mother was sleeping on the bed—and made her "perform oral sex with him on the ground."

¶8        The final incident occurred when Victim was preparing for school. She was in the bathroom with the door locked, but Barnes constantly knocked to get in. Victim told him to go away and leave her alone. Unbeknownst to Victim, the last time she said "leave me alone," Mother was on the other side of the door. Victim finally told Mother that Barnes had been sexually abusing her, resulting in Mother confronting Barnes with a sword. In a fit of anger, Mother chased Barnes out of the house, cutting him as a result. Victim locked herself and her siblings in her room while her parents fought.

¶9        The police arrived and arrested Barnes because he had an outstanding warrant. Neither Victim nor Mother told the police about Barnes sexually assaulting Victim. Victim feared that if she mentioned the sexual assaults, Barnes would retaliate and press charges against Mother for coming at him with a sword. Barnes was tried, convicted, and sentenced to six and a half years in prison for his previous offense.

¶10        Barnes was released from prison in 2009 and began living with his girlfriend and her minor-aged children in Arkansas. Soon after his release, Barnes started calling Mother continuously. As a result, Victim learned that he was living with his girlfriend and her children. Afraid for the children, she contacted the police and reported the sexual assaults, detailing five incidents.

¶11        Detective Patricia Ramirez of the Tempe Police Department interviewed both Victim and Mother. Based on their conversations, the Detective subsequently arranged for confrontation phone calls between Barnes and Mother. In the longest call, Mother asked Barnes about the allegations Victim made. Barnes did not deny the accusations, but instead attempted to explain his actions and asked Mother for forgiveness.

Consequently, Detective Ramirez submitted the charges against Barnes, using the confrontation calls as corroborating evidence for Victim's allegations. An arrest warrant was issued, and Barnes was arrested.

¶12 Barnes was charged with one count of attempted molestation of a child, a class three felony; one count of molestation of a child, a class two felony; and three counts of sexual conduct with a minor, class two felonies. At the close of trial, the jury found Barnes guilty of all the charges. It also found two aggravating circumstances for all the charges: (1) the offenses caused physical, emotional, or financial harm to Victim and (2) Barnes abused his position of trust over Victim.

¶13 After the verdict was entered, but before sentencing, Barnes moved to vacate the judgment because he had newly discovered evidence that contrary to Mother's testimony, she did visit him while he was incarcerated from 2003 to 2009. A record from the Department of Correction ("DOC") showed that Mother had visited Barnes twice. The trial court denied the motion, holding that Barnes had failed to show that he exercised due diligence in obtaining the DOC record and that the newly discovered evidence probably would have changed the jury's result. It noted: "Of most importance, the Court finds that evidence from the victim and from the confrontation call was so overwhelmingly strong that introduction of new evidence would not be likely to change the result."

¶14 The trial court conducted the sentencing hearing in compliance with Barnes's constitutional rights and Arizona Rule of Criminal Procedure 26. It sentenced Barnes to: 12 years with 608 days credit for attempted molestation of a child, to run concurrently with 20 years flat with 608 days credit for molestation of a child; and 22 years flat with no credit for each of the three counts of sexual conduct with a minor. The first 22-year period would run consecutive to the attempted child molestation and child molestation periods. The second 22-year period would run consecutive to the first 22-year period, and the third 22-year period would run consecutive to the first and second 22-year periods. The trial court also imposed restitution to Victim and necessary administrative fees.

**DISCUSSION**

¶15        We review the entire record for reversible error. *State v. Thompson*, 229 Ariz. 43, 45 ¶ 3, 270 P.3d 870, 872 (App. 2012). Counsel for Barnes has advised this Court that after a diligent search of the entire record, she has found no arguable question of law. However, in his supplemental brief, Barnes argues that (1) he was prejudiced by the confrontation call; (2) defense counsel was ineffective; and (3) the trial court erred by denying his motion to vacate the judgment.

¶16        Barnes argues that the admission of the confrontation call prejudiced him because the call included references to his father's sexual abuse history, which "put in [the jury's] mind that this sex problem runs in the family." Barnes has not demonstrated how the admission of these statements prejudiced his case, however. A mere claim of prejudice is not enough to meet a showing of prejudice requiring reversal. *See State v. Parker*, 22 Ariz.App. 111, 116, 524 P.2d 506, 511 (1974). The trial court ordered that the State refrain "from introducing testimony or mentioning in any other manner the allegations made by [Mother] to the Tempe PD in regard to a history of child sexual abuse within the Defendant's family," and neither the State nor its witnesses mentioned the matter. In any event, the evidence from the victim and Barnes's own admissions in the confrontation call is so strong that what little effect these statements may have had on the jury would not have changed the result.

¶17        Barnes next argues that defense counsel was ineffective because counsel failed to notice the statements about Barnes's father on the confrontation call. But claims of ineffective assistance of counsel may not be raised on direct appeal. *State ex rel Thomas v. Rayes*, 214 Ariz. 411, 415 ¶ 20, 153 P.3d 1040, 1044 (2007); *State v. Spreitz*, 202 Ariz. 1, 3 ¶ 9, 39 P.3d 525, 527 (2002). Instead, they must be presented to the trial court in a post-conviction relief proceeding. *Rayes*, 214 Ariz. at 415 ¶ 20, 153 P.3d at 1044.

¶18        Barnes argues finally that the trial court erred in denying his motion to vacate judgment because he had newly discovered evidence that Mother in fact visited him while he was in prison, contrary to her testimony. We will not disturb the trial court's ruling absent an abuse of discretion. *State v. Hess*, 231 Ariz. 80, 81 ¶ 1, 290 P.3d 473, 474 (App. 2012). A defendant is entitled to relief if he shows that the newly discovered evidence: is material; was discovered after trial; was discovered with due diligence by him; is neither cumulative nor impeaching; and probably would have changed the verdict. Ariz. R. Crim. P. 32.1(e); *see also Hess*, 231 Ariz. at 82 ¶¶ 6–7, 290 P.3d at 475.

**¶19** In this case, the trial court correctly found that Barnes did not exercise due diligence in obtaining the DOC record and that the newly discovered evidence probably would not have changed the verdict. During her direct testimony, Mother said that she did not visit Barnes while he was in prison; she repeated that testimony in rebuttal one day later. But Barnes did not request a pause in trial to obtain DOC records during either of her testimonies. Moreover, Barnes never interviewed Mother before trial to learn what she was going to say. Additionally, the DOC record probably would have not have changed the verdict. The strongest evidence against Barnes was the victim's testimony and his own words in the confrontation call. What effect Mother's mistake may have had on the jury would not have changed the result. Consequently, the trial court did not abuse its discretion in denying Barnes's motion for a new trial.

**¶20** We have read and considered counsel's brief and fully reviewed the record for reversible error. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. We find none. The proceedings were all conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, counsel represented Barnes at all stages of the proceedings, and the sentences imposed were within the statutory limits. We decline to order briefing and affirm Barnes's convictions and sentences.

**¶21** Upon the filing of this decision, defense counsel shall inform Barnes of the status of his appeal and of his options. Defense counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). Barnes shall have 30 days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review. On the Court's own motion, we extend the time for Barnes to file a pro per motion for reconsideration to 30 days from the date of this decision.

## CONCLUSION

**¶22** We affirm Barnes's convictions and sentences.

