663 A.2d 206

COMMONWEALTH of Pennsylvania, Appellant,

v.

Francis REESE, Appellee.

Superior Court of Pennsylvania.

Argued April 4, 1995.

Filed Aug. 1, 1995.

40

Martha J. Duvall, Asst. Dist. Atty., Gettysburg, for Com., appellant.

Tony Sangiamo, York, for appellee.

Before CAVANAUGH, McEWEN and DEL SOLE, JJ.

DEL SOLE, Judge:

This is a Commonwealth appeal from an order granting Appellee a new trial following receipt of DNA evidence in a post-conviction hearing proceeding. We affirm.

In 1982, following a jury trial, Appellant was found guilty of Rape, Kidnapping and related offenses. At trial the victim testified that in April of 1982 at about 9:30 in the evening, as she was driving her vehicle, another vehicle approached from behind with its lights flashing. The victim, thinking it was her boyfriend, pulled off the road. At this point the assailant approached her car, opened her door, grabbed her wrist and directed that she drive to a remote area. The victim testified that she was forced out of the car along the roadside and sexually assaulted. The victim and the assailant then returned to her car and drove back to the place where the assailant had left his vehicle. The assailant left, directing the victim not to tell anyone about the incident. The victim contacted her boyfriend and the police and was then taken to a

hospital for treatment. At trial, the victim identified Appellee as the stranger who raped her. She was questioned extensively about the dark conditions during the incident and her proximity to her attacker. Although the victim gave a description of the car being driven by the assailant, Appellee was not connected, at trial, to either the ownership or availability of any such car for his use. The Commonwealth also offered evidence of a chemist from the state police crime laboratory. He testified that stains found on the victim's underwear and a smear from a vaginal slide taken by a physician each indicated the presence of seminal fluid containing spermatozoa. The chemist further advised the jury that he conducted no further tests on the samples to determine if Appellee was the depositor of the seminal fluid because, at that time, in the scientific community no test was available which could make such a determination within a reasonable degree of medical certainty.

Appellee's conviction was affirmed following a direct appeal, and previously filed requests for post-conviction relief were denied. In the most recently filed petition for relief under the Post–Conviction Relief Act, Appellee couched all his claims under the guise of ineffective assistance of counsel, except for a request for DNA testing. The court dismissed each of the ineffectiveness arguments presented by Appellee, but ultimately granted his request for DNA testing. The court concluded that DNA testing is a recognizable form of after-discovered evidence, that it was unobtainable at trial and that it has exculpatory potential, such that its results would not be merely cumulative. The court remarked that it hoped to achieve "finality" by its ruling and therefore ordered that testing could be done, at the petitioner's expense, on any remaining evidence.

The testing was ultimately done, and at a hearing which followed, the parties stipulated that "the forensic evidence relevant in this case indicates that Mr. Reese (Appellee) has been excluded as the depositor of any of the forensic evidence that was uncovered in this case." As a result of this scientific finding the court set aside Appellee's conviction and awarded him a new trial. The Commonwealth took this timely appeal.

42

■ The Commonwealth begins by arguing that the court erred when it first determined that it was appropriate to order DNA testing. While acknowledging that post-conviction testing was allowed in *Commonwealth v. Brison*, 421 Pa.Super. 442, 618 A.2d 420 (1992), the Commonwealth argues that *Brison* is factually dissimilar and should not be relied upon to support the PCRA court's ruling in this case. It maintains that the *Brison* court's decision was premised on the specific fact that the identification testimony was questionable in view of the poor lighting conditions and the victim's physical condition due to the stabbing she suffered. It is also pointed out that the defendant in *Brison* presented an alibi defense whereas Appellee in this case did not take the stand and offered no evidence of alibi at trial.

■ Contrary to the Commonwealth's position, we find *Brison* both instructive and supportive of the court's ruling in this case. The *Brison* court began its analysis with a review of the law found in sister states with regard to DNA testing. It noted that the DNA testing process is now acknowledged by both the scientific community and the courts as an accurate means of matching cellular material to a specific individual. It opined that "as scientific technology continues to advance, DNA analysis may eventually become as widely accepted as routine and decisive as fingerprint or other types of evidence." *Id.* at 452, 618 A.2d at 425. In considering circumstances where such testing was not available at the time of trial but is requested in a post-trial proceeding, the court cited to *Sewell v. State*, 592 N.E.2d 705, 707–708 (Ind.App. Dist. 3 1992). Therein the court found that the "potential for exculpation by DNA comparison parallels the potential for accurate identification." *Id.* 592 N.E.2d at 708. Thus, where the request for forensic tests are made in a post-conviction proceeding, the right to discovery will be implicated "where a conviction rest[s] largely on identification evidence and advanced technology could definitively establish the accused's innocence." *Id.* The *Brison* court, recognizing the wide acceptance of this evidence and its ability to accurately inculpate or exclude a

particular person as the perpetrator of the crime, went on to examine the factual circumstances of its case.

In *Brison* there were poor lighting conditions during the assault due to a darkened location, and rain, however the victim testified that she was able to observe her assailant for a substantial period of time. The victim in *Brison* consistently identified the defendant as the perpetrator of the crime; however, she did not specifically describe any of her assailant's facial characteristics to the police. Further, there was no physical evidence recovered in *Brison* which conclusively connected the defendant to the crime.

In the present case, the victim was assaulted in a dark isolated area. Although the victim was with her assailant for a substantial period of time and in close proximity, she was not able to describe his facial features to the police. While the victim here, as in *Brison,* consistently identified the person charged as her assailant, Appellee was never linked to the crime by any physical evidence. No fingerprint tests were conducted. Appellee was not linked to the crime or its location by fibers or hair samples and the vehicle described by the victim was not connected to Appellee at trial. In *Brison* there was concern expressed that the victim may have been prompted to identify the named defendant because she had seen him previously in the neighborhood, and, in this case, the defense attempted to demonstrate thru cross-examination the the victim's identification of Appellee may have been prompted by the actions of her boyfriend. Thus, contrary to the position taken by the Commonwealth, we find the facts of this case remarkably similar to those of *Brison.*

■ The *Brison* court went on to remark that the admission of DNA test results which exclude the defendant may be sufficient to create reasonable doubt which could secure an acquittal. In the event the results of DNA testing are inculpatory, the Commonwealth's case would be strengthened. Under these circumstances the court concluded, "the principles of justice" require a DNA analysis to be performed on samples taken from the victim. We likewise find that the

same "principles of justice" apply in this case to support the PCRA court ruling directing the performance of DNA testing. In this matter, which was decided solely on identification testimony of the victim, which identification was challenged by the defense, it was proper for the court to allow such testing to definitively establish whether Appellee could be connected to the seminal fluid evidence introduced at trial.[1]

Finding no abuse of discretion or error of law in the decision to have DNA test performed we now turn to the Commonwealth's claim that the information obtained as a result of the tests does not warrant the PCRA court's award of a new trial. When reviewing a decision to grant a new trial on the basis of after-discovered evidence, we are to determine whether the court committed an abuse of discretion or an error of law which controlled the outcome of the case. *Commonwealth v. Bonaccurso*, 425 Pa.Super. 479, 625 A.2d 1197 (1993).

In this case the receipt of information, which revealed that Appellee could not be the depositor of the seminal fluid found on the victim's clothing following the attack, must be examined to determine whether it properly formed the basis for the court's award of a new trial. *See Brison*, at 453, n. 13, 618 A.2d at 425, n. 13. In addition to establishing that the new evidence would be producible and admissible at trial, the party seeking a new trial should be granted relief only where it is shown that there was unavailable at the time of trial exculpatory evidence which has subsequently become available and which "would have affected the outcome of the trial had it been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). To grant such relief the court must be satisfied that the evidence "could not have been obtained at trial by reasonable diligence, that it is not cumulative or of such a nature that it

1. The Commonwealth also argues that Appellee waived any request for DNA testing by his actions taken at trial where he withdrew a request for "scientific" testing. The PCRA court rejected this argument in view of the fact that DNA testing was not available at the time of trial because the technology for such a precise test had not yet developed. We accept the court's rationale for rejection of this claim as sound.

merely impeaches credibility, and that it would be likely to compel a different result." *Commonwealth v. Galloway*, 433 Pa.Super. 222, 640 A.2d 454 (1994).

The Commonwealth does not dispute that the newly discovered evidence satisfies most of this criteria, but instead argues that in view of other evidence which could be presented, the DNA evidence loses its exculpatory quality. In considering this argument it is necessary to also review the Commonwealth's remaining claim that the PCRA court wrongly refused to allow it to present evidence at the PCRA hearing.

■ The Commonwealth sought to offer evidence from the police who spoke to the victim after the attack and were advised by her that the assailant complained to her that he was unable to ejaculate during the assault. It also sought to have the court hear testimony from the victim. The Commonwealth wished to establish through her testimony that in 1982, at the time of the crime, she had a live-in boyfriend with whom she was having sexual relations on a regular basis. It was claimed by the Commonwealth that this testimony should be heard by the court because it would rebut the claim that the DNA test results were truly exculpatory. The Commonwealth reasons that if the court were to accept the testimony establishing that the rapist did not ejaculate and that the victim was regularly engaging in sexual intercourse with her boyfriend at the time of the rape, then it would not follow that the DNA test results excluding Appellee as the depositor were exculpatory. Rather, it argues this evidence would offer a reasonable explanation as to why Appellee was not linked through the DNA testing to the seminal fluid obtained following the victim's hospital examination.

The weakness with the Commonwealth's argument rests in the fact that the evidence it sought to have the PCRA court review was not evidence which was introduced and heard by the jury at trial. The jury was not advised of the assailant's comment and was not told about the victim's sexual activity. However the jury did hear testimony in which the victim detailed the attack, and identified Appellee as the attacker.

The jury was also advised that seminal fluid samples were obtained from the clothing worn by the victim the night of the attack. The clear implication of the evidence offered at trial was to corroborate the victim's account of the evening and testimony of a sexual assault by Appellee. Because the jury did not hear evidence of other explanations for the deposit of this seminal fluid, it would have been improper for the PCRA court to have considered it when examining whether the DNA evidence was exculpatory and whether it would likely have resulted in a different verdict if admitted at trial. The narrow issue before the PCRA court was whether the DNA evidence would have affected the outcome of the trial had it been introduced. We find that the PCRA court properly restricted the evidence during the hearing to that which was relevant to this question. While the Commonwealth's proposed evidence may in fact be proper rebuttal testimony in a new trial, it was irrelevant to the matter under consideration before the PCRA court.

The award of a new trial in this case was made based upon the exculpatory nature of the DNA test results and the conclusion that this evidence was not cumulative and would likely have affected the outcome of the trial had it been introduced. As stated, the jury was advised that seminal fluid was found on the victim's clothing following the attack, but because scientific developments had not yet made it possible to perform accurate and precise DNA testing, the jury was not advised that Appellee could not have been the depositor of the seminal fluid. Nor was the jury advised that the perpetrator did not ejaculate. Because this information is so very critical, it was appropriate for the court to award a new trial. Only under these circumstances can we be assured that the "interests of justice" have prevailed.

Order affirmed.