J. S35003/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
          Appellant :
:
          v. : No. 2224 EDA 2015
:
RICHARD BLACK :


Appeal from the Order, June 19, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0801921-2006


BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND MUSMANNO, J.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED SEPTEMBER 09, 2016**

The Commonwealth of Pennsylvania ("Commonwealth") appeals from

the order entered in the Court of Common Pleas of Philadelphia County that

granted the petition of Richard Black ("Black") filed pursuant to the Post

Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA") and ordered a

new trial.

The PCRA court set forth the following:

> On January 7, 2011, [Black] entered into a
> negotiated guilty plea to possession with intent to
> manufacture or deliver (PWID) and persons not to
> possess, use, manufacture, control, sell or transfer
> firearms, and was sentenced to 2-5 years[']
> incarceration on each charge to run concurrently.
> The plea was based upon evidence contained in the
> PARS [arrest report], prepared by Philadelphia Police
> Narcotics Field Unit Officer Brian Reynolds that, on
> February 13, 2006, Philadelphia Police Officers Brian
> Reynolds and Bogan received information from a

confidential source that a black male named "Rich" sold cocaine in the South Philadelphia area using his cell phone [] to facilitate sales. The source also stated that "Rich" drives a white Pontiac or a gold Honda. During the evening hours of February 13, 2006, the source placed an order for cocaine with "Rich" using the cell phone number and arranged to meet at the Dunkin['] Donuts at the corner of 16th Street and Washington Avenue in the city and county of Philadelphia. The source was told that "Rich" would be driving the white Pontiac. At approximately 9:40 P.M., Officer Thurston observed a Pontiac Grand Prix pull into the Dunkin['] Donuts parking lot. Officers Reynolds and Bogan observed a male, later identified as [Black], exit the vehicle and enter the Dunkin['] Donuts. The PARS does not indicate whether the confidential source identified [Black] as "Rich." Officers Reynolds, Brennan, Sharkus and Bogan entered the Dunkin['] Donuts and approached [Black]. Officer Reynolds recovered drugs, money and drug paraphernalia from one of [Black's] jacket pockets and a cell phone [] and index cards from the other. [Black] was arrested and transported for processing. Officer Reynolds conducted a field test and determined that the drugs recovered from [Black] were positive for cocaine and cocaine base. Officer Reynolds then secured the Grand Prix and obtained a search warrant. At approximately 2:25 AM on February 14, 2006, Officer Bogan executed the search warrant on the vehicle. A bullet proof vest, firearm and ammunition were recovered from the trunk. Officer Reynolds was the only witness present at [Black]'s preliminary hearing.

On September 9, 2010, a motion to suppress and to identify the confidential informant was litigated before the Honorable Linda Carpenter. Officer Reynolds was the sole witness presented at the hearing. Officer Reynolds testified that he and Officer Bogan were with a confidential source and had the source make a phone call to arrange delivery of crack cocaine. The confidential source was not a registered confidential informant and this was the

first time Officer Reynolds had worked with him. Officer Reynolds testified that, when the confidential source made the call, through the phone, [] (Officer Reynolds) heard the male on the other end of the call say that he would be arriving to the area of Dunkin['] Donuts on 1500 Washington Avenue in a white Pontiac. Officers Reynolds and Bogan and other un-named [sic] officers, along with the confidential source proceeded to the designated area. Officer Reynolds surveilled the areas somewhere between 15 minutes and 2 hours. At approximately 9:40 PM, Officer Reynolds observed [Black] arrive in a white Pontiac Grand Prix and enter the Dunkin['] Donuts. Officer Reynolds testified that he then entered the store with other officers and approached [Black] as he stood at the counter. Officer Reynolds conducted a pat down and recovered illegal narcotics from [Black's] right jacket pocket. Also recovered from [Black's] person was [sic] new and unused pink packets, a used silver razor, index cards, a cell phone and $1450. Based upon that, Officer Reynolds obtained a search warrant for the Pontiac. Recovered from the trunk was [sic] a bullet proof vest, and a Glock [.]40 caliber handgun with a laser mounted on it. The weapon was loaded with nine live rounds in the magazine. Officer Reynolds also testified that the source was not a confidential informant, just a person he had encountered in the 1700 block of South Orianna Street. He did not have any contact information for the source and was unable to retrieve contact information because the file had been lost. He also testified that he was the affiant on the search warrant. Both motions were subsequently denied. Thereafter, on January 7, 2011, [Black] pleaded guilty to the charges and received the negotiated sentence of 2-5 years['] incarceration. No direct appeal was taken.

In December, 2012, the Philadelphia District Attorney's Office advised the Philadelphia Police Commissioner that it would no longer [] use the testimony of certain officers from the Narcotics Field Unit, including Officer Brian Reynolds, in further

prosecutions because of credibility problems, and began dismissing open cases involving those officers. In early 2013, it was confirmed that the officers were under investigation by the FBI and Police Internal Affairs.[1]  On February 19, 2013, [Black] filed a pro se PCRA petition asserting that he was entitled to relief because of the unavailability at the time of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.  PCRA counsel was appointed and, on May 15, 2014, counsel filed an amended petition alleging newly discovered evidence of corruption and misconduct in the prosecution of criminal cases by Officer Reynolds and members of the Narcotics Field Unit.  This new evidence rendered [Black's] guilty plea involuntary.  Office [sic] Reynolds and five others were under federal indictment for fabricating evidence, lying under oath and other misconduct.  After reviewing all the evidence presented by the Commonwealth and PCRA counsel and hearing argument at the January 9, 2015 listing, on the following court date, June 19, 2015, the Court granted [Black's] petition for a new trial.  [The Commonwealth] then requested a status listing to provide time to determine how they wished to proceed and the case was listed for status on August 7, 2015 without opposition.  On July 6, 2015, [the Commonwealth] filed a motion for reconsideration of the Court's determination that [Black] was entitled to a new trial and requesting an evidentiary hearing.  The motion contended other officers were involved in [Black's] arrest and highlighted (by bolding) the names of officers other than Officer Reynolds contained in the PARS.  [The Commonwealth] did not request an expedited court date or indicate witnesses who would be presented.  However, on July[] 16, 2015, [the Commonwealth] filed the instant appeal effectively divesting the Court of its jurisdiction to address the motion.

---

1 This court takes judicial notice of the fact that Officer Reynolds was acquitted of corruption charges in the United States District Court for the Eastern District of Pennsylvania.

PCRA court opinion, 10/13/15 at 1-4 (footnotes omitted).

The Commonwealth raises the following issue for this court's review: "Did the PCRA court err in granting [Black] a new trial on an untimely PCRA petition without jurisdiction, where [Black's] burden went unmet as the court did not hold an evidentiary hearing?" (Commonwealth's brief at 4.)

In PCRA appeals, our scope of review "is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." *Commonwealth v. Sam*, 952 A.2d 565, 573 (Pa. 2008) (internal quotation omitted). Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. *Commonwealth v. Pitts*, 981 A.2d 875, 878 (Pa. 2009). We defer to the PCRA court's factual findings and credibility determinations supported by the record. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). In contrast, we review the PCRA court's legal conclusions *de novo*. *Id.*

"When reviewing the grant or denial of post-conviction relief, the appellate court is limited to determining whether the lower court's findings are supported by the record and its order is otherwise free of legal error. We grant great deference to findings of the PCRA court." *Commonwealth v. Stark*, 658 A.2d 816, 818 (Pa.Super. 1995) (citations omitted).

> Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. *Commonwealth v. Robinson*, 575 Pa. 500, 508, 837 A.2d 1157, 1161 (2003). The most recent

amendments to the PCRA, effective January 16, 1996, provide a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1); ***Commonwealth v. Bretz***, 830 A.2d 1273, 1275 (Pa.Super. 2003); ***Commonwealth v. Vega***, 754 A.2d 714, 717 (Pa.Super. 2000). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

***Commonwealth v. Monaco***, 996 A.2d 1076, 1079 (Pa.Super. 2010).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petition must allege and prove:

(i)   the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)  the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

> 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). "As such, when a PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the trial court has no power to address the substantive merits of a petitioner's PCRA claims." ***Commonwealth v. Gamboa-Taylor***, 562 Pa. 70, 77, 753 A.2d 780, 783 (2000); 42 Pa.C.S.A. § 9545(b)(2).

*Id.* at 1079-1080.

Initially, the Commonwealth contends that the PCRA court erred when it granted Black a new trial without holding a hearing on an untimely PCRA petition where Black did not meet his burden of proving a time bar exception.

As the Commonwealth points out, Black's judgment of sentence became final on February 7, 2011. Under Section 9545(b)(1) of the PCRA, 42 Pa.C.S.A. § 9545(b)(1), a petition must be filed within one year of the date the judgment became final subject to certain exceptions. Black did not file his petition until February 19, 2013, well beyond the one-year limit. However, the PCRA court determined that Black's untimeliness was excused under the after-discovered evidence exception to the time bar. Under Section 9545(b)(2) of the PCRA, 42 Pa.C.S.A. § 9545(b)(2), a petitioner has 60 days to file a petition from the date that the claim could have been presented.

In his amended petition which was filed on May 15, 2014, Black asserts that while the Philadelphia County District Attorney's Office notified the City of Philadelphia Police Commissioner on December 3, 2012 that it would not be using the testimony of Officer Reynolds any longer in the prosecution of criminal cases based on its belief that his testimony was incredible, this notification did not trigger the 60-day time limit because Black could not have known about the notification even if he exercised due diligence.

With respect to this issue, the PCRA court determined:

> It is uncontroverted that [Black] could not have ascertained the facts upon which his claim is based, i.e., information about the corruption and misconduct by the officer involved in the prosecution of his case, through the exercise of due diligence. [Black] plead [sic] guilty on January 7, 2011, well before the time the District Attorney declined to use the testimony of Officer Reynolds and other Narcotics Field Unit officers and began dismissing open cases involving the officers. The Court is also satisfied that [Black] met the 60 day requirement because his petition was filed during the time information was still being gathered and the police corruption matter was still evolving. Therefore, [Black's] petition met the after discovered evidence exception to the PCRA time bar and the Court had jurisdiction to address [Black's] issues.

PCRA court opinion, 10/13/15 at 5-6.

This court agrees with the PCRA court that Black could not have known about the situation involving Officer Reynolds at the time that he pled guilty on January 7, 2011. Although the District Attorney sent the letter to the

City of Philadelphia Police Commissioner on December 3, 2012, there is nothing in the record that indicates that Black knew or could have known about it at that time, even with the exercise of due diligence. The PCRA court determined that Black complied with the 60-day requirement because the petition was filed during the time that information with respect to the alleged police corruption was still being gathered and the investigation was evolving. This court determines that the PCRA court did not abuse its discretion when it found that the petition complied with 42 Pa.C.S.A. § 9545(b)(2), assuming that the fact that Officer Reynolds was removed from testifying in cases and was subsequently indicted constitutes after-discovered evidence.

The Commonwealth next contends that Black failed to meet his burden of proving the existence of after-discovered evidence that would entitle him to a new trial. The Commonwealth argues that, at most, Black was entitled to an evidentiary hearing.

> To obtain relief based on after-discovered evidence, [an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Pagan***, 950 A.2d 270, 292 (Pa. 2008) (citations omitted).

- 9 -

"The test is conjunctive; the [appellant] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." **Commonwealth v. Padillas**, 997 A.2d 356, 363 (Pa.Super. 2010) (citation omitted). When an appellate court reviews the decision to grant or deny a new trial on the basis of after-discovered evidence, the appellate court must determine whether the PCRA court committed an abuse of discretion or error of law that controlled the outcome of the case. **Commonwealth v. Reese**, 663 A.2d 206, 209 (Pa.Super. 1995).

For support, the Commonwealth relies on **Commonwealth v. Castro**, 93 A.3d 818 (Pa. 2014), where this court remanded for an evidentiary hearing to determine if information contained in a newspaper article that the arresting officer was under investigation for corruption and the falsification of evidence in another case involving the same confidential informant constituted after-discovered evidence. The Commonwealth appealed to the Pennsylvania Supreme Court. Our supreme court reversed on the basis that the motion did not address the potential evidence that Castro would use to support his request for a new trial:

> However, we hold a motion must, at the very least, describe the evidence that will be presented at the hearing. Simply relying on conclusory accusations made by another, without more, is insufficient to warrant a hearing. . . . The motion says nothing about which, if any, of this potential evidence appellee would rely on to support his request for a new trial. Absent identification of the

> actual testimony, physical evidence, documentation or other type of evidence to support the allegations of Officer Cujdik's wrongdoing, we cannot conclude appellee had evidence to offer; to conclude otherwise would be speculation.

*Id.* at 827.

The Commonwealth uses **Castro** to support its contention that, at the very least, the matter should be remanded to the PCRA court for an evidentiary hearing. The Commonwealth does not rely on **Castro** to argue that Black is not entitled to any relief at all. The Commonwealth argues that the PCRA court erred in awarding Black a new trial rather than conducting an evidentiary hearing on the purported after-discovered evidence as this court did in **Castro** before our supreme court reversed.

In his amended post-conviction petition with consolidated memorandum of law, Black alleged:

10. Following [Black's] guilty plea and sentencing on January 7, 2011, Officer Reynolds came under investigation concerning his investigatory practices.

11. On December 3, 2012, the Philadelphia District Attorney's Office sent a letter to Police Commissioner Charles Ramsey advising that it would not be using the testimony of Officer Reynolds in its prosecution of criminal cases based upon its belief that his testimony was incredible.

12. On March 2, 2013, the Honorable Diana Louis Anhalt granted a new trial in the case of **Commonwealth v. Joseph Scott**, CP-51-CR-0000525-2012 based upon the District Attorney's letter to Police Commissioner

Charles Ramsey. The defendant had entered a plea of ***nolo contender*** [sic] to a drug offense twelve day[s] prior to the District Attorney's letter. . . .

13. Numerous federal civil rights lawsuits have been filed against Officer Reynolds and the Philadelphia Police Department with regard to Reynolds' investigatory practices. . . .

14. On January 19, 2014, it was reported for the first time in the Philadelphia Inquirer that a federal grant [sic] jury had been convened to determine whether federal charges were warranted against Officer Reynolds and other police officers. . . .

15. On January 19, 2014, it was also reported that Officer Reynolds was removed from the Narcotics Unit and given a low profile departmental job. . . .

16. Since December 2012, numerous prosecutions have been dismissed as a result of the involvement of Officer Reynolds. . . .

17. Narcotics Officer Jeffrey Walker is cooperating with federal authorities and is expected to testify against Officer Reynolds. . . .

. . . .

20. The information concerning Police Officer Reynolds is not merely corroborative or cumulative and will not be used solely to impeach the credibility of a witness. The newly discovered evidence in question attacks the heart and soul of the Commonwealth's case against [Black].

21. Presentation of the newly-discovered evidence would likely result in a different verdict if a new trial were granted.

22. In light of the allegations against Officer Reynolds, his claim that there was a confidential source is called into question.

23. In fact, at the motion to suppress, Officer Reynolds could not recall any information and did not have any paperwork concerning the confidential source. . . .

24. Following the denial of [Black's] motion to suppress physical evidence, which may have been based upon the false testimony of Officer Reynolds, [Black] had no choice but to enter a guilty plea.

25. To the extent that [Black] was forced to plead guilty based upon the allegedly false testimony presented at the hearing on the motion to suppress, his guilty plea may not be considered to be knowing, voluntary and intelligent.

Amended Post Conviction Petition with Consolidated Memorandum of Law, 5/15/14 at 4-5 and 10-11, ¶¶ 10-17, 20-25 (citations omitted).

As required by *Castro*, Black asserts that he has clearly identified the actual testimony, physical evidence, documentation, or other evidence that would be produced at a hearing because there is a wealth of documentary evidence with respect to the investigation of Officer Reynolds including volumes and volumes of testimony from the grand jury proceedings and federal court trial.

With respect to this issue, the PCRA court determined:

As indicated above, [Black] was sentenced on January 7, 2011 well prior to the evidence of Officer Reynolds' participation in fabricating evidence and committing misconduct in the prosecution of

- 13 -

cases, the December 2012 letter indicating that the District Attorney declined to use testimony from Officer Reynolds because of credibility concerns, and the ongoing investigations by the FBI and Internal Affairs. This evidence was not cumulative or corroborative of other evidence and would likely result in a different verdict if a new trial were granted. Additionally, had this information been available at or prior to trial, it would likely have changed the way trial counsel advised [Black] and would have permitted trial counsel other avenues of inquiry during the litigation of appellee's motions.

[The Commonwealth] also complains that the Court erred when it granted [Black's] petition without first conducting an evidentiary hearing. There is no absolute right to an evidentiary hearing. Where there is no genuine issue of material fact, no evidentiary hearing is required. ***See Commonwealth v. Springer***, 961 A.2d 1262, 1264 (Pa.Super. 2008) (On appeal, we examine the issues raised in light of the record "to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing."). It should be noted that [the Commonwealth] did not request an evidentiary hearing prior to or at the June 19, 2015 listing where [Black's] PCRA petition was granted. (N.T. 06/19/15 pg. 4-5)[Footnote 5] [The Commonwealth] made the first request for an evidentiary hearing in its motion to reconsider filed July 6, 2015. Moreover, while [the Commonwealth] requested an evidentiary hearing in the motion, and highlighted names of officers that appeared in the PARS besides Officer Reynolds, no indication of who would testify at the evidentiary hearing and/or what the testimony would be was included. [The Commonwealth] provided no evidence to refute the information the Court had available to it. Notwithstanding, appellant then filed the instant appeal thereby transferring jurisdiction to the Superior Court and precluding the Court's ability to rule on the motion to reconsider its decision.

> [Footnote 5] Because of the significant number of cases under review, the appellant and the Public Defender engaged in a process whereby they would evaluate cases and make recommendations to the Court. In [Black's] case, [the Commonwealth] argued against relief and the Defender agreed. However, [Black] engaged private counsel who argued for relief. (N.T. 03/06/15 pg. 3-5) Despite the difference of opinion between [the Commonwealth] and private counsel, no evidentiary hearing was requested.

PCRA court opinion, 10/13/15 at 6-7.

While Black could have identified the actual evidence he intends to present with more specificity, he believes the evidence will indicate that there was not a confidential informant who tipped off Officer Reynolds concerning Black especially since Officer Reynolds could not recall any information about the informant and did not have any paperwork concerning the confidential informant at the motion to suppress. The trial court's denial of Black's motion to suppress evidence could have been made in error based upon the false testimony of Officer Reynolds. Had the trial court granted the motion to suppress, Black may not have entered a guilty plea. If Black can prove this theory, the after-discovered evidence would not just impeach the credibility of Officer Reynolds but possibly could result in a different verdict if a new trial were granted.

Given the record before this court, we believe the best course of action is to remand to the PCRA court for an evidentiary hearing on this possible

after-discovered evidence as in **Castro**. Although the PCRA court stated that the Commonwealth only requested an evidentiary hearing in its motion for reconsideration and then appealed to divest the PCRA court of jurisdiction to rule on the motion for reconsideration, the Commonwealth had no reason to request a hearing until Black prevailed before the PCRA court. Further, the Commonwealth had to appeal in a timely manner and could not wait for the PCRA court to rule on its motion before appealing.

Order vacated. This case is remanded to the PCRA court for an evidentiary hearing on the proffered after-discovered evidence. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2016