J-S58025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRETT OWEN FEESE, | |
| Appellant | No. 246 MDA 2017 |

Appeal from the PCRA Order January 9, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0001927-2011, CP-22-CR-0002585-2010

BEFORE:  GANTMAN, P.J., SHOGAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:  **FILED OCTOBER 13, 2017**

Brett Owen Feese ("Appellant") appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546.  We affirm.

A previous panel of this Court set forth the factual history of this case as follows:

> Appellant's case arises out of the scandal known as "Computergate," a scheme in which taxpayer funds, employees, and other resources were misused for partisan campaign purposes by elected members of the Pennsylvania House of Representatives ("House"), and, in particular, by members of the House Republican Caucus ("HRC"), from 2001–2007.  The misused government resources were directed toward the purchase and implementation of technological services, equipment, and data that permitted the analysis of individual voter information for use in political campaigns.  Emerging mobile communication technologies designed for political campaign workers ("TelStar") were integrated with massive

databases of voter data ("Blue Card") to provide campaign operatives with extensive capabilities to identify and mobilize voters for partisan get-out-the-vote operations and to facilitate direct messaging of information of interest to individual voters or particular groups of voters.

The facts adduced at trial demonstrated that the HRC used taxpayer funds to pay outside contractors to implement and provide ongoing support for these programs from 2001 until 2006. Contractors GCR, Inc. ("GCR") from New Orleans, Louisiana, and Aristotle International ("Aristotle"), from Washington, D.C., worked in tandem with taxpayer funded legislative employees from the Republican Information Technology Services ("RITS") to develop, implement, maintain, and integrate TelStar and Blue Card. During this time, Appellant, an elected member of the House, held various leadership positions with the HRC, where he served both as Director of the House Republican Campaign Committee (HRCC) and Chief Counsel for the HRC. The crux of the instant case revolved around the extent to which Appellant knew of, directed, and/or approved of the illegal use of taxpayer funded resources to develop, implement, and maintain the campaign technologies, as well as his subsequent efforts to cover up his involvement and hinder the investigation of the Office of Attorney General ("OAG").

On July 9, 2010, the OAG filed a criminal information at CP–22–CR–0002585–2010 charging Appellant for crimes committed from 2001–2007. The charges included nine counts of conflict of interest, 65 Pa.C.S. § 1103(a); nine counts of theft by unlawful taking or disposition, 18 Pa.C.S. § 3921(a); nine counts of theft by deception, 18 Pa.C.S. § 3922(a)(1); nine counts of theft of services, 18 Pa.C.S. § 3926(a); nine counts of theft by failure to make required disposition of funds received, 18 Pa.C.S. § 3927(a); one count of hindering apprehension or prosecution, 18 Pa.C.S. § 5105; one count of obstructing administration of law or other government function, 18 Pa.C.S. § 5101; and eleven counts of criminal conspiracy, 18 Pa.C.S. § 903. On May 11, 2011, the OAG filed an additional criminal information at CP–22–CR–0001927–2011 for crimes committed from 2007–2009, therein charging Appellant with an additional four counts: hindering apprehension or prosecution, obstructing administration of law or other government function, and two counts of criminal conspiracy.

Appellant and nine co-defendants were initially charged, however, only co-defendant Jill Seaman proceeded to trial with Appellant; the remaining eight co-defendants entered guilty pleas, some of whom ultimately testified against Appellant and Seaman at trial. Following a twenty-three day jury trial on forty charges, the jury convicted Appellant on all counts. On February 10, 2012, the trial court sentenced Appellant to an aggregate term of 4–14 years' incarceration, and ordered restitution in the amount of $1,000,000. Appellant was also required to pay $25,000 in fines.

*Commonwealth v. Feese*, 79 A.3d 1101, 1103–1104 (Pa. Super. 2013).

This Court affirmed the judgment of sentence, and the Supreme Court of Pennsylvania denied allowance of appeal. *Id.* at 1128, *appeal denied*, 94 A.3d 1007 (Pa. 2014).

The PCRA court updated the procedural history as follows:

[Appellant] timely filed a PCRA Petition on or about August 31, 2015. In his Petition, [Appellant] makes two claims: 1. Witness statements and other exculpatory and/or impeachment material were improperly withheld from him due to the destruction of them by the Office of Attorney General ("OAG") in contravention of his federal and state constitutional rights and the Pennsylvania Rules of Criminal Procedure and Professional Conduct; 2. [Appellant] was denied the constitutional right to a fair and impartial tribunal due to the fact that the trial court judge's law clerk applied for and was offered employment by the OAG, a job which was eventually accepted. [Appellant] asserts that his claims for relief have not been previously litigated or waived. Further, [Appellant] argues that the ground upon which he bases his claims were previously unknown to him and could not have been ascertained by due diligence. Finally, [Appellant] asserts that the newly discovered evidence would have changed the outcome of the trial had it been available to him. The Commonwealth has filed an Answer to the instant Petition.

PCRA Court Opinion, 5/3/16, at 1–2. Additionally, Appellant filed a motion for recusal on November 5, 2015.

- 3 -

Finding no genuine issues concerning any material fact, the PCRA court entered an order denying Appellant's request for a hearing and notifying Appellant of its intent to dismiss his petition within twenty days pursuant to Pa.R.Crim.P. 907. In a separate order of the same date, the PCRA court denied Appellant's motion for recusal. Orders, 5/3/16. After Appellant filed a timely response to the PCRA court's notice, the PCRA court dismissed Appellant's petition. Order, 1/9/17. This appeal followed. Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our consideration:

A.   Whether it was error for the PCRA court to deny [Appellant] collateral relief without a hearing under 42 Pa.C.S.A. §9543(a)(3) because his claim that evidence to which he was entitled had been destroyed in bad faith by the prosecution was fully litigated on direct appeal?

B.   Whether it was error for the PCRA court to deny [Appellant] collateral relief without a hearing under 42 Pa.C.S.A. § 9544(b) because his claim that prosecutors engaged in a lengthy series of ex parte communications with the trial court's judicial law clerk in the period leading up to and continuing throughout [Appellant's] trial during which the prosecutors created a job opportunity for, offered employement [sic] to, and hired the court's judicial law clerk could have been presented at trial or on direct appeal and, thus, was waived?

C.   Whether it was an abuse of discretion for the PCRA court to deny [Appellant's] request that it recuse itself from consideration of his request for collateral relief when one of the issues raised involved attempts by the prosecution to improperly influence the judicial process through a series of ex parte communications with the court's law clerk?

Appellant's Brief at 2–3 (full capitalization omitted).

- 4 -

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Matias*, 63 A.3d 807, 810 (Pa. Super. 2013) (citing *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009)). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014). Moreover, "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008) (quoting *Commonwealth v. Barbosa*, 819 A.2d 81 (Pa. Super. 2003)). "[S]uch a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015).

Appellant first challenges the PCRA court's denial of collateral relief without an evidentiary hearing where Appellant submitted after-discovered evidence in the form of six witness "certifications" to support his claim that

the prosecutor engaged in "the bad faith destruction of exculpatory and impeachment material." Appellant's Brief at 31. According to Appellant, each witness was interviewed by the Office of the Attorney General ("OAG") at least once; notes were taken during the interview(s); five of the witnesses provided exculpatory and/or impeachment material; the OAG's Report of Investigation did not contain the five witnesses' exculpatory or impeachment material; the OAG did not elicit the exculpatory or impeachment material before the Grand Jury or at trial; and the OAG offered one of the witnesses a sentencing inducement to testify against Appellant at trial. PCRA Petition, 8/31/15, at Exhibits 24–29.[1] Appellant asserts that his claim is not frivolous and an evidentiary hearing is warranted "[g]iven the probative value of the certifications in establishing; [sic] the existence -- at least at one time -- of exculpatory and impeachment material." Appellant's Brief at 32.

In response, the OAG argues that Appellant is not entitled to relief for alternative reasons. According to the OAG, Appellant's allegation of prosecutorial misconduct in the context of witness interview notes was waived because Appellant did not include this issue in his Pa.R.A.P. 1925(b) statement. OAG's Brief at 9. Alternatively, the OAG contends that

---

[1] Of the six witnesses identified in the certifications, the following testified before the Grand Jury: William Tomaselli, Lori Cherry McGill, Mary Beth Morey, and John Hanley. Mr. Tomaselli and Mr. Hanley also testified at Appellant's trial. Appellant's Brief at 29–30.

Appellant's prosecutorial misconduct claim was previously litigated. *Id.* at 11. The OAG also asserts that, had the issue not been waived or previously litigated, it is without merit. *Id.* at 15.

The PCRA court determined that Appellant's prosecutorial misconduct claim was previously litigated:

> Presently, [Appellant] is attempting to argue that he has newly acquired evidence that bears upon the issue of the OAG proffer statements. He contends that the evidence consists of statements made by William Tomaselli, John Hanley, John Perzel, Lori Cherry McGill, Mary Beth Morey, and Lori Lochetto who he believes provided exculpatory and impeachment material to the OAG, prior to trial, which was not disclosed in discovery. (PCRA Petition, ¶¶ 28–31, p.6). In support of his claim, [Appellant] attaches certifications of the named witnesses which are unsworn but, satisfy Pa.R.Crim.P. 902(a)(15) which pertains to the statutory requirement if a petitioner is requesting an evidentiary hearing.
>
> The OAG responds to [Appellant's] first claim by arguing that the issue has been fully and finally litigated and, accordingly, is not subject to relief under the PCRA. The OAG counters [Appellant's] position by arguing that what has been presently provided by [Appellant] is not "new evidence"; rather, the certifications, which are unsworn and signed by counsel, only stand for the proposition that notes were taken during witness interviews and were destroyed. Accordingly, the OAG goes on at length to argue that the purported newly discovered evidence is not substantially different from the evidence underlying [Appellant's] claim on direct appeal which was rejected by the Superior Court.
>
> Upon review of the Petition and the extensive support submitted by each party to advance their respective positions, this [c]ourt finds that [Appellant's] first PCRA claim has been fully litigated and, therefore he is not entitled to relief.
>
> * * *

[Appellant's] first issue on direct appeal was: Whether the massive, deliberate destruction by the OAG of witness interview notes and proffer statements violated the defendant's rights under the United States Constitution, the Constitution of the Commonwealth of Pennsylvania, Pennsylvania Rule of Criminal Procedure 573, Pennsylvania Rule of Professional Conduct 3.8(D), and deprived him of a fair trial. **Commonwealth v. Feese**, 79 A.3d 1101, 1105 (Pa. Super. 2013). The Superior Court analyzed the issue at length in its published opinion and rejected [Appellant's] arguments. **Feese**, 79 A.3d 1105–1115. Upon careful review of the entire record, this [c]ourt does not see how the unsworn certifications addressing what the witnesses would testify to if a hearing was warranted are substantially different from what has been fully litigated on appeal. Accordingly, [Appellant's] first claim does not entitle him to relief under the Act. 42 Pa.C.S. § 9543.

PCRA Court Memorandum Order, 5/3/16, at 3–5.

Upon review, we reject the OAG's waiver argument, finding Appellant's first issue sufficiently preserved in his Pa.R.A.P. 1925(b) statement. Additionally, we affirm the trial court's ruling, but on a different basis. **See Commonwealth v. Doty**, 48 A.3d 451, 456 (Pa. Super. 2012) (holding this Court is not bound by rationale of trial court and may affirm trial court's order on any basis).

In disposing of this issue, we assume the certifications attached to Appellant's PCRA petition are true and that they do, in fact, support his claim of prosecutorial misconduct. Contrary to the OAG's assertions that it fulfilled its discovery obligations, the certifications indicate that witness interviews were held, notes were taken, exculpatory and/or impeachment material was provided, the notes were destroyed, and the exculpatory and/or impeachment material was not elicited before the Grand Jury or provided to

Appellant through discovery. PCRA Petition, 8/31/15, at Attachments. Nevertheless, we are persuaded by the OAG's argument that Appellant has not met the test "for establishing post-conviction relief based on after-discovered evidence." OAG's Brief at 15 (citing **Commonwealth v. Pagan**, 950 A.2d 270 (Pa. 2008). In fact, Appellant does not address this test in his appellate brief. Appellant's Brief at 23–31.

To be entitled to relief under the PCRA on the basis of exculpatory after-discovered evidence, the petitioner must plead and prove by a preponderance of the evidence "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi). We have explained further:

> To obtain relief based on after-discovered evidence, an appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

**Commonwealth v. Foreman**, 55 A.3d 532, 536–537 (Pa. Super. 2012) (quoting **Pagan**, 950 A.2d at 292 (citations omitted)). "The test is conjunctive; the appellant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." **Id.** at 537 (quoting **Commonwealth v. Padillas**, 997 A.2d 356, 363 (Pa. Super. 2010) (citation omitted)). "Further, when reviewing

the decision to grant or deny a new trial on the basis of after-discovered evidence, an appellate court is to determine whether the PCRA court committed an abuse of discretion or error of law that controlled the outcome of the case." *Id.* (quoting **Commonwealth v. Reese**, 663 A.2d 206 (Pa. Super. 1995)).

Even assuming the certifications are not merely cumulative or corroborative and would not be used solely to impeach the credibility of a witness, Appellant would not be entitled to a new trial. Appellant has not proven that the certifications were unobtainable prior to the conclusion of trial by the exercise of reasonable diligence. Notably, Appellant does not complain that he did not receive the Grand Jury transcripts, which included the testimony of four of his witnesses; nor does Appellant dispute that the OAG disclosed its list of eighty-five potential trial witnesses or that his six witnesses were on that list. Thus, at the time of trial in September of 2011, Appellant knew of the six witnesses he subsequently interviewed in July and August of 2015 for purposes of obtaining the certifications attached to his PCRA petition. Before or during trial, Appellant could have investigated, interviewed, called to testify, or cross-examined the six witnesses to obtain the information he now submits as after-discovered evidence requiring collateral relief. Appellant waited until four years after his conviction to obtain the certifications. Appellant explains this delay as the result of unsuccessful pretrial discovery motions. PCRA Petition, 8/31/15, at ¶¶ 36–

37.  Additionally, Appellant states that the evidence "only became available to him after his release from incarceration on June 28, 2015 when [he] was able to personally speak to these witnesses and implore them based on their personal relationship with him to assist him in this effort by disclosing their knowledge regarding the suppressed statements."  *Id.* at 35.  Contrary to Appellant's assertion, we do not equate his personal touch with reasonable diligence.  We reiterate our previous opinion:

> To the extent they could have provided exculpatory testimony, there is nothing of record to indicate why these witnesses could not have been called by the defense, particularly since the transcripts of the Grand Jury were clearly available to the defense before trial . . . and, thus, known to Appellant prior to his trial. Joint Motion to Dismiss, at ¶¶ 13–15.  It is only the prior statements, and not the witnesses, that would have been rendered unavailable if the OAG destroyed interview notes related to those witnesses.

*Feese*, 79 A.3d at 1113 n.7.

Furthermore, Appellant has failed to articulate, let alone establish, how the after-discovered evidence would result in a different verdict.  Although Appellant repeatedly asserts that the certifications prove the OAG withheld exculpatory material, he offers no substantive analysis as to why the jury's finding of guilt on all counts after twenty-three days of trial should be disturbed.  Appellant's Brief at 23–31.  Thus, because Appellant has failed to show by a preponderance of the evidence that each of the factors for obtaining relief based on after-discovered evidence has been met, he is not entitled to relief.  *Foreman*, 55 A.3d at 537; *Padillas*, 997 A.2d at 363.

- 11 -

There being no genuine issue of material fact regarding Appellant's first issue, we conclude the PCRA court did not commit an abuse of discretion or error of law that controlled the outcome of the case in dismissing Appellant's petition without a hearing. **Foreman**, 55 A.3d at 537; **Reese**, 663 A.2d 206.

Next, Appellant complains that the PCRA court dismissed his petition without a hearing where Appellant submitted after-discovered evidence of "the improper relationship between the OAG and the trial court's law clerk," Clarke H. Madden ("Mr. Madden"). Appellant's Brief at 18. According to Appellant, he obtained this evidence through a Right-to-Know Request submitted on September 22, 2014, after recent "news articles placed the public on notice that OAG attorneys had engaged in improper communications . . . with judges and other judicial branch employees." **Id.** Appellant contends that the lead prosecutor and Mr. Madden "engaged in a series of ex parte email communications in the period leading up to and continuing throughout [Appellant's] trial. These communications involved the OAG's creation of a job opening which they made available to Mr. Madden, and which he accepted." **Id.** at 33. Appellant argues, "Regardless of motive . . . this conduct had the legal effect of so corrupting [Appellant's] prosecution as to invalidate his conviction and compel a new trial." **Id.**

In response, the OAG argues that Appellant is not entitled to relief, again for alternative reasons. According to the OAG, Appellant's allegation of prosecutorial misconduct in the context of Mr. Madden's employment application was waived because Appellant did not include this issue in his Pa.R.A.P. 1925(b) statement. OAG's Brief at 20. Alternatively, the OAG contends that Appellant's prosecutorial misconduct claim lacks merit "because he has failed entirely to establish any prejudice." *Id.* at 21.

The PCRA Court determined that Appellant's second prosecutorial misconduct claim was waived for lack of presentation on direct appeal:

> The essence of [Appellant's] second claim is that his constitutional right to a fair trial was violated because the trial court judge's law clerk, Mr. Clarke Madden, applied for and was offered employment with the OAG at the time [Appellant's] prosecution was proceeding. [Appellant's] second PCRA claim is presented in his Petition in a meandering manner but, is best be [sic] summarized in Petition ¶137:
>
> > The OAG's relationship with Mr. Madden and/or the *ex parte* communications between the OAG and Mr. Madden violated [Appellant's] due process right to a fair and impartial tribunal under both the federal and state constitutions. (Citations omitted).
>
> [Appellant] goes on to recount a series of disjointed events beginning with the OAG position becoming available and continuing through Mr. Madden's application process including communications made to correct any missing information and/or errors in the transmission of the job application. [Appellant] then explains how, after reading newspaper articles "the public was placed on notice" that personnel in the OAG had improperly communicated with employees of the Judicial Branch, he felt compelled to file Right-to-Know Requests searching for a connection between Mr. Madden and the OAG. (PCRA Petition, p. 26). Upon this foundation, [Appellant] makes a claim that he

is entitled to relief under the [PCRA] because he was deprived of a fair trial.

The OAG responded to these allegations by arguing that [Appellant] has waived this issue because he failed to raise on appeal the only purported error that may have resulted from the alleged improper contact. Further, the OAG contends that, *assuming arguendo* that the issue has not been waived, [Appellant] has failed to allege and prove what influence over his trial was a result of the alleged improper relationship.

Upon careful consideration of the Petition and response, this [c]ourt finds that pursuant to 42 Pa.C.S. §9544(b), [Appellant] has waived the issue presented as his second claim for PCRA relief. An issue is waived if "the petitioner could have raised it but failed to do so before trial, during unitary review, on appeal or in a state post-conviction proceeding." [Appellant's] allegations in connection with his second claim consist of a chronology of pre-trial proceedings, a recitation to the job duties of a judicial law clerk in Dauphin County, and the steps taken by Mr. Madden and the OAG that culminated in Mr. Madden obtaining employment with the OAG. [Appellant] also goes to great lengths to point out errors on the part of Mr. Madden in the completion and transmission of his job application which he tries to characterize as some sort of preferential treatment since he was ultimately hired. However, as aptly pointed out by the OAG, the essential missing element of [Appellant's] claim is any form of error which impacted his trial to such an extent that he was unfairly prejudiced. The only claim that could conceivable be considered as an allegation of error is found in ¶121:

> On October 25, 2011, [Appellant] submitted proposed jury instructions. Pursuant to Dauphin County's Job description, it was Mr. Madden's duty to review and prepare jury instructions. At least one of [Appellant's] critical jury instructions was denied. (PCRA Petition, p. 24).

If the denial of that particular jury instruction was so *critical* to his case and he believed that it was erroneously omitted, [Appellant] had every opportunity to raise the issue on direct appeal and did not. The remainder of the allegations in ¶121 are pure speculation. The connection he attempts to make between a generic job description duty and a *critical* jury

- 14 -

instruction, which he interestingly does not specify the nature of, in the context of an improper relationship between officers of the court and a judge's employee is extremely tenuous at best. Even if one assumed it correct for the sake of argument, the paper-thin allegation of a possible prejudicial trial error was true, was not raised on appeal and therefore, has been waived. Accordingly, the only conclusion the [c]ourt may come to is that [Appellant's] second claim for PCRA relief is also without merit.

PCRA Court Opinion, 5/3/16, at 5–7 (emphasis in original).

Upon review of Appellant's second issue, we reject the OAG's waiver argument, finding the issue sufficiently preserved in his Pa.R.A.P. 1925(b) statement. Additionally, we affirm the trial court's ruling, but on a different basis. *Doty*, 48 A.3d at 456.

We discern no abuse of the PCRA court's discretion or error of law in its conclusions that Appellant's PCRA petition lacked merit and a hearing was not warranted. In reaching this conclusion, we agree with Appellant that he could not have discovered the *ex parte* communications before the conclusion of trial given the private nature of emails. Moreover, we acknowledge that the evidence of Mr. Madden and the OAG communicating is neither cumulative nor corroborative of other evidence presented at trial. Furthermore, although evidence of such communications may have undermined the credibility of the prosecutor, it would not be used to impeach the credibility of a witness. Arguably, therefore, Appellant has satisfied the first three factors for obtaining relief on the basis of after-discovered evidence.

However, Appellant has failed to establish how the after-discovered evidence of Mr. Madden's email communications with the OAG would likely result in a different verdict if a new trial were granted. In other words, the proffered evidence is not exculpatory in that it does not point to Appellant's innocence. 42 Pa.C.S. § 9543(a)(2)(vi). Thus, because Appellant has failed to show by a preponderance of the evidence that each of the factors for obtaining relief based on after-discovered evidence has been met, he is not entitled to relief. **Foreman**, 55 A.3d at 537; **Padillas**, 997 A.2d at 363. There being no genuine issue of material fact regarding Appellant's second issue, we conclude the PCRA court did not commit an abuse of discretion or error of law that controlled the outcome of the case in denying Appellant collateral relief without a hearing. **Foreman**, 55 A.3d at 537; **Reese**, 663 A.2d 206.

Lastly, Appellant asserts that the PCRA court erred in denying his recusal request. The basis for Appellant's request was the series of *ex parte* communications between Mr. Madden and the OAG prosecutor during Appellant's trial over which the PCRA presided. Appellant's Brief at 18, 37. According to Appellant, "[t]he fundamental issue . . . was not bias, but, rather, the continued participation by the PCRA court judge under circumstances which created an appearance of impropriety that would tend to undermine public confidence in the judiciary." *Id.* at 38.

In response, the OAG asserts:

> [Appellant] has failed to allege that any pre-trial, trial or sentencing error occurred or was influenced by an apparently incomplete online job application pending . . . during the pendency of [Appellant's] case. . . . Further, [Appellant] has alleged no personal bias or prejudice towards [Appellant] and/or in favor of the Commonwealth by the PCRA court, nor has [Appellant] alleged any impartiality by the court. Absent any such specific claims, [Appellant] has failed to even adequately state a basis for recusal.

OAG's Brief at 23–24. We agree.

Our Supreme Court has discussed the standards governing recusal, as follows:

> A trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can be reasonably questioned. It is presumed that the judge has the ability to determine whether he will be able to rule impartially and without prejudice, and his assessment is personal, unreviewable, and final. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion. Additionally, it is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially.

***Commonwealth v. Tedford***, 960 A.2d 1, 55–56 (Pa. 2008) (internal quotation marks, citations, and formatting omitted).

Our standard of review of a trial court's determination not to recuse is exceptionally deferential because we recognize that our trial judges are "honorable, fair and competent." ***Commonwealth v. Harris***, 979 A.2d 387, 391 (Pa. Super. 2009); ***Commonwealth v. Postie***, 110 A.3d 1034, 1037 (Pa. Super. 2015). Thus, "although we employ an abuse of discretion

standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially." **Harris**, 979 A.2d at 392; **Postie**, 110 A.3d at 1037. Moreover, "[t]he party who asserts that a trial judge should recuse bears the burden of setting forth specific evidence of bias, prejudice, or unfairness. Furthermore, a decision by the trial court against whom the plea of prejudice is made will not be disturbed absent an abuse of discretion." **Postie**, 110 A.3d at 1037 (quoting **Harris**, 979 A.2d at 392) (internal quotation marks omitted).

In response to Appellant's recusal request, the PCRA court stated the following:

> Upon review of the pleadings, [Appellant] has failed to show this [c]ourt how he feels he will suffer bias, prejudice or unfairness in the consideration of his PCRA Petition by this [c]ourt. [Appellant] asserts that he is seeking a ruling on his PCRA petition that is "completely objective and uninfluenced by any considerations related to the job opportunity extended by the Commonwealth to the [c]ourt's former law clerk . . ." without specifically pointing to the reasons why this [c]ourt would be biased. Additionally, although the PCRA Petition goes on at length about how [Appellant] feels that this [c]ourt's former law clerk was involved in potentially improper deeds which impacted his right to a constitutionally sound criminal trial, which are very serious allegations, he was not immediately concerned about any potential bias as the instant recusal motion was not filed for months after the assignment of the PCRA Petition to this [c]ourt.
>
> Upon review of the Motion and the Commonwealth's response, this [c]ourt fails to grasp what specific factors [Appellant] believes impair this [c]ourt's ability to be impartial other than the mere claim that a former claw clerk applied for and was offered a job with the Office of Attorney General. Further, [Appellant] has not pointed to a single act or occurrence whereby the application process involving a former law clerk and any allegations he is making in connection thereto, without

- 18 -

more, amounts to such discernible bias that recusal is necessary. As such, we conclude that [Appellant] has not satisfied his burden of showing bias, prejudice or unfairness that rise to such a significant level to warrant recusal to sustain his motion.

PCRA Court Memorandum Opinion, 5/3/16, at unnumbered 2–3.

Upon review of the record, we discern no basis for disturbing the PCRA court's ruling. Appellant acknowledged that the fundamental issue "was not bias" and that "the PCRA court focused solely on the absence of evidence of bias or prejudice, but nothing of the sort was alleged." Appellant's Brief at 38. Appellant's bald claim that the PCRA court's continued participation created an appearance of impropriety "does not satisfy the burden of setting forth specific evidence of bias, prejudice, or unfairness." *Harris*, 979 A.2d at 392; *Postie*, 110 A.3d at 1037. Furthermore, as the PCRA court observed, Appellant's "request is made in the context of mere possibilities—that discovery [involving Mr. Madden] will be granted and an evidentiary hearing is warranted." PCRA Court Memorandum Opinion, 5/3/16, at unnumbered 2. Indeed, Appellant speculates that the PCRA court refused to recuse itself "from presiding over litigation which **could** involve, and **potentially** cause harm to his former clerk." Appellant's Brief at 38 (emphases supplied). Accordingly, we conclude that the PCRA court did not abuse its discretion or commit an error of law in denying Appellant's motion for recusal.

- 19 -

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/13/2017